# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DONALD RAY MAGEE, JR.**                          **CIVIL ACTION**

**VERSUS**                                          **NO.  22-2589**

**TRAVIS DAY, WARDEN**                              **SECTION "H"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Donald Ray Magee, Jr. ("Magee"), is a convicted inmate incarcerated in the B.B. Rayburn Correctional Center, in Angie, Louisiana.  On July 25, 2011, Magee was charged in Washington Parish with sexual battery upon C.W. (DOB 12/2/98) in violation of La. Rev. Stat. § 14:43.1.[2]  Magee entered a plea of not guilty in the case.[3]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]St. Rec. Vol. 1 of 11, Bill of Information, 7/25/11.  The Louisiana courts referred to the minor victim of sexual offense and her family by their initials in accordance with La. Rev. Stat. § 46:1844(W)(3).  This Court will do the same.

[3]St. Rec. Vol. 1 of 11, Minute Entry, 8/8/11.

The record reflects that the victim, C.W., and her twin sister began living with their grandmother, E.D., in February 2011 after E.D. reported to the Office of Child Services inappropriate behavior by her daughter, including use of drugs and allowing intoxicated adults in the home.[4]  Joan Scanlan, the children's therapist, contacted E.D. after one of her routine sessions, and told her that the victim had made allegations that Magee had sexually assaulted her.  E.D., who was unaware of the incident, confronted the victim, who disclosed that Magee had put his hands on her and rubbed his penis on her butt.  The police were contacted and conducted a photographic line-up with the victim at E.D.'s home.

Detective David Miller of the Bogalusa Police Department conducted the sexual assault investigation in May and June 2011.  He initially spoke briefly with Scanlan about the victim's disclosure.  Scanlan told him that the victim disclosed that Magee rubbed his penis between her butt cheeks.  Scanlan did not state that penetration had been alleged.  Detective Miller scheduled a forensic interview of the victim with the Children's Advocacy Center.  On May 27, 2011, Detective Miller observed the interview on closed-circuit television.  The disclosure made by the victim during the interview was consistent with the information relayed by Scanlan to Detective Miller.  Detective Miller confirmed that the victim identified Magee, whose date of birth is December 26, 1977, in a photographic lineup on June 2, 2011.

The victim, who was thirteen at the time of the trial, confirmed her dated of birth, of December 2, 1998.  She explained that she and her sister went to live with their grandmother in February 2011 because their mother was doing drugs and was violent.  The victim identified Magee, who she knew by the name "Pumpkin," and explained that he occasionally came to her

---

[4]The facts were taken from the opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Magee*, No. 2013 KA 1726, 2014 WL 3843846, at *1, 3-5 (La. App. 1st Cir. June 6, 2014); St. Rec. Vol. 3 of 11, 1st Cir. Opinion, 2013 KA 1726, pp. 2-3, 5-10, 6/6/14.

mother's house.  The victim explained that Magee touched her on one occasion on an evening in January 2011.  She recalled that Magee had come to her mother's home that evening with a woman named "Dakota." According to the victim, as her mother and Dakota were leaving the residence to go buy drugs, her mother asked Magee to discipline the victim because she was being disrespectful.  The victim thought that Magee was going to give her a "whooping." Magee followed the victim into her mother's bedroom, locked the door, pulled down her pants and underwear, and started touching her.  She explained that he "put his stuff between my butt," but clarified that Magee's "private" stayed on the "outside" of her butt.  The victim further explained that Magee used his hand to touch the outside of her private parts and other parts of her body.  The incident ended when Magee the girls' mother pulled into the driveway.  Magee told the victim that he loved her and directed her not to tell her mother. When the victim told Magee that she was going to tell her grandmother about the incident, Magee told her that he had a gun and that he knew where her grandmother lived.

The victim, who was crying, returned to the room with her sister, but was afraid to tell anyone what had happened.  The victim confirmed that she reported the incident to Joan Scanlan after Scanlan asked the victim if anyone had ever touched her in a place she did not want to be touched.  The victim made a drawing depicting the incident.  After she disclosed the incident to Scanlan, the victim told her twin sister and grandmother about the incident.

The victim's sister testified that she was in the living room watching television when her mother told Magee that C.W. was being disrespectful.  She recalled that her mother and Dakota left the home to go buy drugs.  Magee followed C.W. into their mother's room.  The victim's sister believed that Magee was going to "whip" or talk to her.  C.W. was crying when she came out of the bedroom but would not tell her what happened.

Jo Beth Rickels conducted a forensic interview of the victim.  The victim told her that Pumpkin "put his private part between my butt" and specified "not in the hole."  The victim told Rickels that Magee kissed her on the mouth, touched her all over with his hands, including the exterior of her vagina, and told her that he loved her.  The victim used anatomical drawings to identify the specified body parts.  The victim told Rickels that Magee stopped when he heard her mother return.  The victim also told Rickels that Magee threatened to shoot her if he told anyone what he had done and also told her he knew where her grandmother lived.

Scanlan, a license clinical social worker, stated she began counseling sessions with the twins in March 2011.  In May 2011, Scanlan administered a PTSD assessment test to the victim. The test included the following question: "Has anyone ever touched you in your, on your sexual body parts without your permission?" When the victim responded in the affirmative, Scanlan asked her to explain what happened. Based on what the victim told her, Scanlan concluded that "Pumpkin" had sexually abused the victim. Scanlan felt that the victim was trying to say that Magee had put his penis in her vagina. However, the victim later clarified to Scanlan that penetration did not occur.

Dakota Shavers testified that she had known Magee for two years.  She stated that she had only been to the victim's mother's house on a few occasions and denied ever having left the home with the victim's mother.  Shavers did not recall ever being in a car with the victim's mother.  She denied having seen Magee do anything inappropriate to the victim.  She admitted that Magee had been to the victim's mother's house without her on occasion.

On November 12 through 14, 2012, Magee was tried by a jury, and was found guilty as charged.[5]  On January 25, 2013, the Trial Court denied Magee's motion for new trial and oral

---

[5]St. Rec. Vol. 1 of 11, Trial Minutes, 11/12/12; Trial Minutes, 11/13/12; Trial Minutes, 11/14/12; St. Rec. Vol. 6 of 11, Trial Transcript, 11/12/12; St. Rec. Vol. 7 of 11, Trial Transcript, 11/13/12; St. Rec. Vol. 8 of 11, Trial

motion for post judgment acquittal.[6]   On that same day, the Trial Court sentenced Magee to thirty-five years imprisonment at hard labor, the first twenty-five years to be served without the benefit of probation, parole or suspension of sentence.[7]

On direct appeal, Magee's appellate counsel filed a brief raising the following claims: (1) insufficient evidence; (2) the Trial Court erred in denying his motion for mistrial and subsequent motion for new trial; and (3) the sentence imposed was excessive.[8]

On June 6, 2014, the Louisiana First Circuit affirmed Magee's conviction and sentence finding that the evidence was sufficient to support the jury's verdict.[9]   The court also found the Trial Court did not abuse its discretion in denying Magee's motion for mistrial.[10]   Finally, the appellate court found that review of the excessive sentence was procedurally barred.[11]

Magee's conviction was final under federal law thirty-one days later, on July 7, 2014, when he did not seek timely review in the Louisiana Supreme Court.[12]   La. S. Ct. Rule X § 5; *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking

Transcript, 11/14/12.

[6]St. Rec. Vol. 1 of 11, Sentencing Minutes, 1/25/13; Motion for New Trial, 1/25/13; St. Rec. Vol. 8 of 11, Sentencing Transcript, 1/25/13.

[7]St. Rec. Vol. 1 of 11, Sentencing Minutes, 1/25/13; Uniform Commitment Order, 1/25/13;St. Rec. Vol. 8 of 11, Sentencing Transcript, 1/25/13.

[8]St. Rec. Vol. 3 of 11, Appellate Brief, 13-KA-1726, 11/18/13.

[9]*State v Magee,* No. 2013 KA 1726, 2014 WL 3843846, at *1-5 (La. App. 1st Cir. June 6, 2014); St. Rec. Vol. 3 of 11, 1st Cir. Opinion, 2013 KA 1726, pp. 3-10, 6/6/14.

[10]*Magee*, 2014 WL 3843846, at *6-8; St. Rec. Vol. 3 of 11, 1st Cir. Opinion, 2013 KA 1726, pp.11-14, 6/6/14.

[11]*Magee*, 2014 WL 3843846, at *8; St. Rec. Vol. 4 of 13, 1st Cir. Opinion, 2013 KA 1726, pp. 14-15, 6/6/14.

[12]In this case, the thirtieth day fell on a Sunday, and, therefore, Magee had until Monday, July 7, 2014, to file a writ application with the Louisiana Supreme Court.  *See* La. Code Crim. P. art. 13; La. Rev. Stat. § 1:55.

further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)).

More than fifteen months later, on September 22, 2015, Magee filed a motion for leave to file an out-of-time writ application with the Louisiana Supreme Court.[13]  On March 14, 2016, the Louisiana Supreme Court declined to consider Magee's writ application finding it untimely filed under Louisiana Supreme Court Rule X § 5.[14]

On September 25, 2015, Magee filed a motion for home incarceration, which was denied on October 26, 2015.[15]  Magee next filed a motion for production of documents on October 15, 2015.[16]  The motion was denied on January 19, 2016.[17]  He filed a request for public records on December 5, 2015.[18]  The Clerk of Court sent him a copy his commitment package on December 18, 2015.[19]  On December 18, 2015, Magee filed a request for a free copy of the sentencing transcript.[20]  Magee's post-conviction counsel also submitted record requests.[21]

On May 31, 2016, Magee filed a counseled application for post-conviction relief, or, in the alternative, motion to correct illegal sentence, asserting the following claims for relief: (1)

---

[13]St. Rec. Vol. 9 of 11, La. S. Ct. Writ Application, 15 KH 1749, 9/22/15.

[14]*State v. Magee*, 188 So. 3d 1068 (La. 2016); St. Rec. Vol. 9 of 11, La. S. Ct. Order, 2015-KH-1749, 3/14/16.

[15]St. Rec. Vol. 3 of 11, Motion for Home Incarceration, 9/30/15 (signed 9/25/15); Order, 10/26/15.

[16]St. Rec. Vol. 3 of 11, Motion for Production of Documents, 10/15/15.

[17]St. Rec. Vol. 3 of 11, Order, 1/19/16.

[18]St. Rec. Vol. 3 of 11, Request for Public Records Pursuant to La. R.S. 44:1 et seq., 12/5/15.

[19]St. Rec. Vol. 3 of 11, Clerk of Court Letter, 12/18/15.

[20]St. Rec. Vol. 3 of 11, Request for Information under La. R.S. 44:1, et seq., 1/4/16 (signed 12/18/15).

[21]See St. Rec. Vol. 3 of 11, District Attorney Letter Response to Records Request, 2/4/16; Counsel's Letter Requesting Public Records, 3/2/16.

ineffective assistance of trial counsel in failing to object to the jury instructions, the verdict form, and the verdict, and by failing to move for reconsideration of Magee's sentence; and (2) illegal sentence.[22]

On July 26, 2016, the Trial Court denied the application.[23]  The Trial Court found that Magee failed to prove both constitutionally deficient performance by his trial counsel and resulting prejudice.[24]  The Trial Court further found that Magee was properly sentenced under the provisions of La. Rev. Stat. § 14:43.1(C)(2), and that his sentence fell within the statutory range for the offense found to be proved beyond a reasonable doubt.[25]

On January 10, 2017, the Louisiana First Circuit denied Magee's related writ application on the showing made for failure to include the State's answer, the trial transcript, and other documents that might support his claims.[26]  The Louisiana Supreme Court denied Magee's related writ application as moot.[27]

On May 25, 2017, the Louisiana First Circuit denied Magee's writ application related to the Trial Court's denial of his application for post-conviction relief, and, in the alternative, motion to correct illegal sentence.[28]  The court found that the Trial Court properly sentenced Magee under

---

[22]St. Rec. Vol. 3 of 11, Uniform Application for Post-Conviction Relief, 5/31/16; Motion for Post Conviction Relied and in the Alternative Motion to Correct an Illegal Sentence, 5/31/16.

[23]St. Rec. Vol. 3 of 113, Judgment on Post-Conviction with Incorporated Reasons, 7/26/16.

[24]*Id.*, at p. 3-5.

[25]*Id.* at p. 4-5.

[26]*State v. Magee*, No. 2016 KW 1396, 2017 WL 110626 (La. App. 1st Cir. Jan. 10, 2017); St. Rec. Vol. 10 of 11, 1st Cir. Order, 2016 KW 1396, 1/10/17; 1st Cir. Writ Application, 2016 KW 1396, 10/17/16.

[27]*State ex rel. Magee v. State*, 237 So. 3d 1188 (La. 2018); St. Rec. Viol. 3 of 11, La. S. Ct. Order, 2016-Kh-2214, 2/23/18.

[28]*State v. Magee*, No. 2017 KW 0326, 2017 WL 2295049 (La. App. 1st Cir. May 25, 2017); St. Rec. Vol. 10

La. Rev. Stat. § 14:43.1(C)(2), and Magee failed to show that the results would have been different but for counsel's conduct.[29]

On October 15, 2018, the Louisiana Supreme Court denied Magee's related writ application, finding that Magee failed to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that his sentencing claim is not cognizable on collateral review, citing La. Code Crim. P. art. 930.3, *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996), and *State v. Thomas*, 19 So.3d 466 (La. 2009).[30]

While Magee's application for post-conviction relief was pending in the state court's, Magee filed another motion for production of documents on October 18, 2016, which the Trial Court denied as repetitive on November 1, 2016.[31]  Magee filed a motion to compel release of records on November 29, 2016, which was denied on the showing made on January 3, 2017.[32] Magee filed another motion to compel as well as a motion for production of documents, the latter which did not include a proposed order, on January 23, 2017.[33]

---

of 11, 1st Cir. Order, 2017 KW 0326, 5/25/17; 1st Cir. Writ Application, 2017 KW 0326, 4/11/17.

[29]*State v. Magee*, No. 2017 KW 0326, 2017 WL 2295049, at *1 (La. App. 1st Cir. May 25, 2017); St. Rec. Vol. 10 of 11, 1st Cir. Order, 2017 KW 0326, 5/25/17.

[30] *State ex rel. Magee v. State*, 254 So. 3d 692 (La. 2018); St. Rec. Vol. 10 of 11, La. S. Ct. Order, 17-KH-1213, 10/15/18; La. S. Ct. Writ Application, 17 KH 1213, 6/21/17.

[31]St. Rec. Vol. 3 of 11, Motion for Production of Documents, 10/18/16; Order, 11/1/16.

[32]St. Rec. Vol. 3 of 11, Motion to Compel, 11/29/16; Order, 1/3/17.

[33]St. Rec. Vol. 3 of 11, Motion to Compel, 1/25/17 (signed 1/23/17); Motion for Production of Documents, 1/23/17.

Magee filed an application for writ of mandamus on January 19, 2017, seeking a ruling on his motion for production of documents.[34]  On March 20, 2017, the Louisiana First Circuit granted Magee's writ of mandamus and directed the Trial Court to issue a ruling on his motion for production of documents.[35]  By order dated March 30, 2017, the Trial Court noted that the motion was filed without an order, but granted the relief requested and ordered that a copy of the sentencing transcript be sent to Magee.[36]

On April 6, 2017, Magee filed a motion for hearing.[37]  The Trial Court denied the motion by order dated April 16, 2018.[38]

On April 20, 2017, Magee filed another motion for production of documents.[39]  The Trial Court denied the motion on May 17, 2017.[40]  Magee's May 22, 2017 motion for production of documents was denied June 23, 2017.[41]  Another motion for production of documents was denied as repetitive on May 14, 2017.[42]

---

[34]St. Rec. Vol. 3 of 11, Application for Writ of Mandamus, 2017 KW 0079, 1/19/17.

[35]*State v. Magee*, No. 2017 KW 0079, 2017 WL 1064746 (La. App. 1st Cir. March 20, 2017); St. Rec. Vol. 10 of 11, 1st Cir. Order, 2017 KW 0079, 3/20/17; 1st Cir. Writ Application, 2017 KW 0079, 1/19/17.

[36]St. Rec. Vol. 3 of 11, Amended Order, 3/30/17.

[37]St. Rec. Vol. 3 of 11, Motion for Hearing on Newly Discovered Evidence on Sentencing, 4/6/17.

[38]St. Rec. Vol. 3 of 11, Order, 4/16/18.

[39]St. Rec. Vol. 3 of 11, Motion for Production of Documents, Boykin Examination, Guilty Plea, and Sentencing under Provision Article 44.1, 4/20/17.

[40]St. Rec. Vol. 3 of 11, Order, 5/17/17.

[41]St. Rec. Vol. 3 of 11, Motion for Production of Documents, 5/22/17; Order, 6/23/17.

[42]St. Rec. Vol. 11 of 11, Motion for Production of Documents, undated; Order, 5/14/17.

On March 28, 2018, Magee filed another application for writ of mandamus seeking ruling on a motion for production of documents.[43]  On May 29, 2018, the Louisiana First Circuit denied Magee's writ application as moot finding that the state district court had denied the motion or production of documents on April 16, 2018.[44]

On June 14, 2018, Magee sought writs relating to the May 14, 2017 denial of his motion for production of documents.[45]  On October 1, 2018, the Louisiana First Circuit denied the writ application without assigning reasons.[46]

On July 3, 2018, Magee filed a writ application with the Louisiana First Circuit requesting that the state district court judge assigned to his case be recused.[47]  On October 1, 2018, the Louisiana First Circuit denied the writ application.[48]

On July 19, 2018, Magee filed a writ application with the Louisiana First Circuit related to a request for records.[49]  On October 29, 2018, the Louisiana First Circuit denied the writ application.[50]

---

[43]St. Rec. Vol. 11 of 11, 1st Cir. Writ Application, 2018 KW 0457, 3/28/18.  The motion could not be located in the state court record.

[44]*State v. Magee*, No. 2018 KW 0457, 2018 WL 2458874 (La. App. 1st Cir. May 29, 2018); St. Rec. Vol. 11 of 11, 1st Cir. Order, 2018 KW 0457, 5/29/18.  The Trial Court order could not be located in the state court record.

[45]St. Rec. Vol. 11 of 11, 1st Cir. Writ Application, 2018 KW 0839, 6/14/18.

[46]*State v. Magee*, No. 2018 KW 0839, 2018 WL 4770775 (La. App. 1st Cir. Oct. 1, 2018); St. Rec. Vol. 11 of 11, 1st Cir. Order, 2018 KW 0839, 10/1/18.  .

[47]St. Rec. Vol. 11 of 11, 1st Cir. Application for Writ of Mandamus, 2018 KW 0901, 7/3/18.

[48]*State v. Magee*, NO. 2018 KW 0901, 2018 WL 4771796, (La. App. 1st Cir. 10/1/18);St. Rec. Vol. 11 of 11, 1st Cir. Order, 2018 KW 0901, 10/1/18.

[49]St . Rec. Vol. 11 of 11, 1st Cir. Writ Application, 2018 KW 1011, 7/19/18.

[50]*State v. Magee*, No. 2018 KW 1011, 2018 WL 5617215 (La. App. 1st Cir. Oct. 29, 2018); St. Rec. Vol. 11 of 11, 1st Cir. Order, 2018 KW 1011, 10/29/18.

On September 6, 2019, Magee filed a request for public records seeking copies of all documents in his case.[51]  The Trial Court denied the motion on October 7, 2019.[52]  On November 5, 2019, Magee filed an application for writ of mandamus seeking to compel the state district court to respond to his request for public records.[53]  He specifically requested that the court order the Trial Court to supply him with copies of his counseled application for post-conviction relief,[54] the order denying same, and the related minute entry.[55]  On February 10, 2020, the Louisiana First Circuit granted the writ application "for the sole purpose of transferring the writ application to the district court with instructions for the district court to provide relator, if it has not already done so, with a copy of the 2016 ruling on relator's counseled application for postconviction relief and a copy of the criminal court minute entry following the Louisiana Supreme Court's disposition in *State ex rel. Magee v. State*, 2017-1213 (La. 10/15/18), 254 So.3d 692 (per curiam)."[56]

---

[51]St. Rec. Vol. 11 of 11, Request for Public Records Pursuant to LA-R.S. 44:1 et seq., 9/6/19.

[52]St. Rec. Vol. 11 of 11, Order, 10/7/19.

[53]St . Rec. Vol. 11 of 11, 1st Cir. Writ Application, 2019 KW 1510, 11/5/19.

[54]The record shows that, after Magee terminated his post-conviction counsel, counsel provided him with a copy of the post-conviction application filed on his behalf, and advised that he would provide Magee with a copy of the District Attorney file for a service charge of $145.  St Rec. Vol. 10 of 11, Letter, 8/24/16.

[55]St . Rec. Vol. 11 of 11, 1st Cir. Writ Application, 2019 KW 1510, 11/5/19.

[56]*State v. Magee*, No. 2019 KW 1510, 2020 WL 619542 (La. App. 1st Cir. Feb 10, 2020); St. Rec. Vol. 11 of 11, 1st Cir. Order, 2019 KW 1510, 2/20/20.

On December 4, 2019, Magee filed a motion for change of venue.[57]  The Trial Court denied the motion on December 19, 2019.[58]  Also on December 4, 2019, Magee filed a motion to recuse, which was subsequently denied.[59]

On January 30, 2020, Magee filed a request for an evidentiary hearing related to his repeated requests for documents.[60]  The Trial Court denied the motion on March 16, 2020.[61]

By letter dated October 16, 2020, Magee requested a copy of the arrest report.[62]  On October 19, 2020, the Clerk of Court advised Magee that he needed to contact the District Attorney Office to obtain the report.[63]

On August 25, 2020, Magee filed yet another motion for production of documents.[64]  The Trial Court noted that Magee had previously been provided a certified copy of his commitment package, and that his 2016 application for post-conviction relief had been fully litigated and found that he was not entitled to documents to file an unauthorized success application.[65]  The Trial Court

---

[57]St. Rec. Vol. 4 of 11, Motion for Change of Venue, 12/5/19 (signed 12/4/19).

[58]St. Rec. Vol. 4 of 11, Order, 12/19/19.

[59]St. Rec. Vol. 4 of 11, Motion to Recuse, 12/5/19 (signed 12/4/19); Order 12/19/19.

[60]St. Rec. Vol. 4 of 11, Request for an Evidentiary Hearing, 2/3/20 (signed 12/30/19).

[61]St. Rec. Vol. 4 of 11, Order, 3/16/20.

[62]St. Rec. Vol. 4 of 11, Letter, 10/18/20 (signed 10/16/20).

[63]St. Rec. Vol. 4 of 11, Clerk of Court Letter, 10/19/20.

[64]St. Rec. Vol. 4 of 11, Motion for Production of Documents, 8/25/20.

[65]St. Rec. Vol. 4 of 11, Order, 10/30/20.

denied as repetitive Magee's motion for production of documents received on September 10, 2020.[66]

On March 15, 2021, Magee filed a counseled application for post conviction relief claiming the nonunanimous jury verdict violated *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020).[67]   On July 19, 2021, the Trial Court denied Magee's application for post-conviction relief.[68]   On December 6, 2021,the Louisiana First Circuit Magee's related counseled writ application.[69]   Magee did not file a related writ application with the Louisiana Supreme Court.

In the interim, Magee filed a pleading entitled "motion for official misconduct" claiming the Clerk of Court for the Parish of Washington was negligent and obstructed justice.[70]   The Trial Court denied the motion on June 21, 2021.[71]   Magee filed a related writ application on June 29, 2021.[72]   The Louisiana First Circuit denied the writ application on October 1, 2021.[73]   The Louisiana Supreme Court denied Magee's related writ application on February 8, 2022.[74]

---

[66]St. Rec. Vol. 4 of 11, Motion for Production of Documents, 9/10/20 (signed 8/25/20).

[67]St. Rec. Vol. 4 of 11, Second or Subsequent Uniform Application for Post Conviction Relief, 3/15/21; Post Conviction Relief Application, 3/15/21.

[68]St. Rec. Vol. 4 of 11, Judgment on Post-Conviction with Incorporated Reasons, 7/19/21.

[69]*State v. Magee*, No. 2021 KW 1234, 2021 WL 5779483 (La. App. 1st Cir. 12/6/21); St. Rec. Vol. 11 of 11, First Circuit Order, 2021 KW 1234, 12/6/21; Writ Application, 2121 KW 1234, 10/11/21.

[70]St. Rec. Vol. 4 of 11, Motion for Official Misconduct, 6/8/21.

[71]St. Rec. Vol. 4 of 11, Order, 6/21/21.

[72]St. Rec. Vol. 11 of 11, 1st Cir. Writ Application, 2021 KW 0771, 6/29/21.

[73]*State v. Magee*, No. 2021 KW 0771, 2021 WL 4494020 (La. App. 1st Cir. Oct. 1, 2021); St. Rec. Vol. 11 of 11, 1st Cir. Order, 2021 KW 0771, 10/1/21.

[74]*State v. Magee*, 332 So. 3d 641 (La. 2022); St. Rec. Vol. 11 of 11, La. S. Ct. Order, 2021-KH-1759, 2/8/22; La. S. Ct. Writ Application, 21 KH 1759, 11/24/21 (signed 10/20/21).

Magee filed a motion to correct illegal sentence on July 1, 2021.[75]  Magee filed a second

motion to correct illegal sentence on July 21, 2021, which was denied as repetitive on August 16,

2021.[76]  The Louisiana First Circuit denied his related writ application on December 6, 2021,

finding that he failed to include a copy of the bill of information, the commitment order, and other

portions of the record that might support his claims.[77]  The Louisiana Supreme Court denied

Magee's related writ application.[78]

On July 2, 2021, Magee filed a motion seeking a copy of the jury verdict.[79]  The Trial Court

denied the motion on July 19, 2021.[80]

On July 14, 2021, Magee filed a motion for out-of-time reconsideration of sentence.[81]  On

July 26, 2021 and September 27, 2021, Magee filed a document entitled "Ineffective Assistance

of Counsel."[82]  On August 9, 2021, he filed a document entitled "Collateral Review," which the

Trial Court denied on November 30, 2021.[83]  On November 30, 2021, the Trial Court denied

Magee's motions for out-of-time reconsideration of sentence and alleging ineffective of counsel.[84]

---

[75]St. Rec. Vol. 4 of 11, Motion to Correct an Illegal Sentence, 7/1/21.

[76]St. Rec. Vol. 4 of 11, Motion to Correct Illegal Sentence, 8/11/21 (signed 7/21/21); Order, 8/16/21.

[77]*State v. Magee*, No. 2021 KW 1052, 2021 WL 5782364 (La. App. 1st Cir. Dec. 6, 2021); St. Rec. Vol. 11 of 11, 1st Cir. Order, 2021 KW 1052, 12/6/21.

[78]*State v. Magee*, 338 So. 3d 1201 (La. 2022); St. Rec. Vol. 11 of 11, La. S. Ct. Order, 2022-KH-00081, 6/8/22; La. S. Ct. Writ Application, 2022-KH-00081, 1/3/22.

[79]St. Rec. Vol. 4 of 11, Motion for Jury Verdict, 7/7/21 (signed 7/2/21).

[80]St. Rec. Vol. 4 of 11, Order 7/19/21.

[81]St. Rec. Vol. 4 of 11, Motion for Out-of-Time Reconsideration of Sentence, 7 /27/21 (signed 7/14/21).

[82]St. Rec. Vol. 4 of 11, Ineffective Assistance of Counsel, 7/26/21.

[83]St. Rec. Vol. 4 of 11, Collateral Review, 8/9/21; Order, 11/30/21.

[84]St. Rec. Vol. 4 of 11, Judgment Denying Post-Conviction with Incorporated Reasons, 11/30/21.

The Trial Court found that Magee's pleading entitled "Ineffective Assistance of Counsel" relating to his post-conviction relief counsel, bore some resemblance to a civil suit for attorney malpractice and was not cognizable on state-conviction, citing La. Code Crim. P. art. 930.3.[85]  The Trial Court found that, for the majority of his post-conviction pleading, Magee failed to overcome the Louisiana Supreme Court order declaring his right to state collateral review exhausted.[86]  The Trial Court found that Magee was not entitled to relief as to his claim of ineffective assistance of for failure to object to an excessive sentence, as he had received review pre-*State v. Harris*, 306 So. 3d 431 (La. 2020).[87]  The Louisiana First Circuit denied Magee's related writ application on February 14, 2022.[88]

Magee filed another motion for out-of-time reconsideration of sentence on November 30, 2021.[89]  He also filed a motion for collateral review alleging numerous claims of ineffective assistance of trial and appellate counsel.[90]  The Trial Court denied Magee's collateral review motion denied on November 30, 2021.[91]  On February 14, 2022, the Louisiana First Circuit denied as moot in part and denied in part Magee's related writ application.[92]

---

[85]*Id.* at 2.

[86]*Id.*

[87]*Id.* at 3-4.

[88]*State v. Magee*, No. 2021 KW 1478, 2022 WL 443973 (La. App. 1st Cir. Feb. 14, 2022); St. Rec. Vol. 11 of11, 1st Cir. Order, 2022 KW 1478, 2/14/22; 1st Cir Writ Application, 11/29/21 (signed 11/18/21).

[89]St. Rec. Vol. 11 of 11, Motion for Out-of-Time Reconsideration of Sentence, undated.

[90]St. Rec. Vol. 11 of 11, Collateral Review Motion, undated.

[91]See *State v. Magee*, No. 2021 KW 1478, 2022 WL 443973 (La. App. 1st Cir. Feb. 14, 2022); St. Rec. Vol. 11 of 11, 1st Circuit Order, 2021 KW 1478, 2/14/22.  A copy of the order cannot be located in the state court record.

[92]*State v. Magee*, No. 2021 KW 1478, 2022 WL 443973 (La. App. 1st Cir. Feb. 14, 2022); St. Rec. Vol. 11

On June 1, 2022, Magee filed yet another application for post-conviction relief.[93]  On June 16, 2022, the Trial Court denied his application, finding it to be successive.[94]  On June 6, 2022, Magee filed a document entitled "Supplemental PostConviction of Acquittal" in which he sought to have the Trial Judge and deputy clerk recuse themselves.[95]  The Trial Court denied the motion as successive On June 16, 2022.[96]

On September 26, 2022, the Louisiana First Circuit denied Magee's writ application finding that he did not prove he was entitled to relief under La. Code Crim. P. art. 926.2, and that there was no indication that he timely presented his request to recuse the state district court judge, and he failed to include a copy of any ruling on the request.[97]  On November 22, 2022, the Louisiana Supreme Court refused to consider Magee's related writ application, citing La. Sup. Ct. Rule X § 5.[98]

## II. <u>Federal Habeas Petition</u>

On August 3, 2022, Magee filed his original petition for federal habeas corpus.[99]  Magee appears to raise the following claims for relief: (1) ineffective assistance of trial counsel in failing to raise objections during voir dire and object to the Trial Court buying breakfast for the jurors;

---

of 11, 1st Circuit Order, 2021 KW 1478, 2/14/22; Writ Application, 2021 KW 1478, 11/18/21.

[93]St. Rec. Vol. 4 of 11, Application for Post-Conviction Relief, 6/1/22.

[94]St. Rec. Vol. 4 of 11, Judgment Denying Post-Conviction, 6/16/22.

[95]St. Rec. Vol. 4 of 11, Supplemental Postconviction of Acquittal, 6/14/22 (signed 6/6/22).

[96]St. Rec. Vol. 4 of 11, Judgment Denying Post-Conviction, 6/16/22.

[97]*State v. Magee*, No. 2022 KW 0710, 2022 WL 4463261 (La. App. 1st Cir. Sept. 26, 2022).  A copy of the writ application is not included in the state court record.

[98]*State v. Magee*, 350 So. 3d 185 (La. 2022).  A copy of the writ application is not included in the state court record.

[99]Rec. Doc. No. 1.

(2) incomplete transcripts; (3) ineffective assistance of trial counseling in failing to subpoena witnesses and records; (4) ineffective assistance of trial counsel in failing to (a) request a *Fry* hearing; and (b) request an admonishment after the prosecution asked Scanlan to render an opinion; (5) excessive sentence; (6) ineffective assistance of counsel based on a conflict of interest; (7) his trial counsel failed to satisfy the requirements for counsel representing a defendant in a capital case; (8) illegal arrest and failure to hold a 72-hour hearing; (9) withholding Scanlan's report from evidence deprived him of his rights to due process and confrontation and insufficient evidence supported the verdict; (10) ineffective assistance of counsel in failing to (a) subpoena witnesses for the preliminary hearing; (b) request DNA testing; (c) object to Scanlan's lay witness testimony; (d) object to jury instructions; (e) object to the sentence and file a motion for reconsideration of sentence; and (f) obtain sentencing records for appeal.[100]

The State filed a response claiming that Magee's petition is untimely.[101]  Magee filed a traverse entitled "Correct Illegal Sentence" in which he attacked the sufficiency of the evidence and listed Rules of Professional Conduct that he claimed were violated, but he did not address the State's argument relating to timeliness.[102]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[103] applies to this petition, which was filed in this Court under the mailbox rule

---

[100]Rec. Doc. No..

[101]Rec. Doc. No.8.

[102]Rec. Doc. No. 9.

[103]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th

on August 3, 2022.[104]  The threshold questions on habeas review under the amended statute are

whether the petition is timely and whether the claim raised by the petitioner was adjudicated on

the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims

must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997)

(citing 28 U.S.C. § 2254(b), (c)).

The State asserts and the record shows that Magee's federal petition was not timely filed

under the AEDPA.  For the following reasons, Magee's petition should be dismissed as time-

barred.

## IV.    **Statute of Limitations**

The AEDPA codified in 28 U.S.C. § 2244(d)(1)(A) requires a petitioner to bring his § 2254

claim within one year of the date the state court conviction became final.  *Duncan v. Walker*, 533

U.S. 167, 176-80 (2001).  The statute also provides three other triggering events that do not apply

here.[105]  For purposes of § 2244(d)(1)(B), Magee does not assert that he was subject to state action

---

Cir. 1992).

[104]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Magee signed his pleadings on August 3, 2022, which the earliest date Magee could have given his petition to prison officials for mailing.

[105] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-

A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

that impeded him from filing his federal petition in a timely manner.  None of Magee's claims are

based on a constitutional right that has been newly recognized by the Supreme Court and made

retroactive to cases on collateral review to involve for purposes of § 2244(d)(1)(C).  Moreover,

contrary to his conclusory claim,[106] none of Magee's claims raise a constitutional issue that is

based on a new "factual predicate," as required by § 2244(d)(1)(D).

Subsection D provides for delayed commencement of the federal limitations period when

a petitioner's claim is based on a factual predicate that could not have been discovered earlier

through the exercise of due diligence.  Fifth Circuit precedent makes this clear:

> A habeas petitioner's AEDPA limitations period begins running from "the date on
> which the factual predicate of the claim or claims presented could have been
> discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).
> "[T]his means the date a petitioner is on notice of the facts which would support a
> claim, not the date on which the petitioner has in his possession evidence to support
> his claim." *In re Davila*, 888 F.3d 179, 189 (5th Cir. 2018) (quoting *In re Young*,
> 789 F.3d 518, 528 (5th Cir. 2015)).  Section 2244(d)(1)(D) does not "convey a
> statutory right to an extended delay ... while a habeas petitioner gathers every
> possible scrap of evidence that might ... support his claim." *Flanagan v. Johnson*,
> 154 F.3d 196, 199 (5th Cir. 1998).

*Osborne v. Hall*, 934 F.3d 428, 432-33 (5th Cir. 2019).

Here, Magee claims that June 6, 2022 is the date on which the factual predicate of his

claims could have been discovered through the exercise of due diligence.  He, however, offers no

---

C. the date on which the constitutional right asserted was initially recognized by the
Supreme Court, if the right has been newly recognized by the Supreme Court and made
retroactively applicable to cases on collateral review; or

D. the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is pending shall not be counted toward any period of
limitation under this subsection.

28 U.S.C. § 2244(d).

[106]Rec. Doc. No. 1-1, at p. 13.

explanation as to what occurred on this date.  Nor does he point to any belated discovery of evidence supporting his claims that prevented him from seeking timely relief under Subsection D. Magee has failed to establish a factual predicate event to reset the start of the limitations period under § 2244(d)(1)(D).

Pursuant to § 2244(d)(1)(A), the court must then consider whether Magee filed his federal petition within one year of the finality of his conviction.  As state above, Magee's conviction was final under federal law on July 7, 2014, when his time to file a timely petition for writ with the Louisiana Supreme Court expired.  Pursuant to § 2244, Magee had one year from that date, or until July 7, 2015, to timely file a federal petition for habeas corpus relief, which he did not do.  Thus, literal application of the statute would bar Magee's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

### A.    <u>Statutory Tolling</u>

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state court pleadings.  *Causey v.*

*Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  The Court has applied this rule in presenting the procedural history recited above with the exception of when Magee was represented by counsel.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.' "  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

Magee's only filing during the one-year limitations period was his writ application to the Louisiana Supreme Court, which was filed no earlier than September 16, 2015,[107] and construed

---

[107]Magee's certificate of service included with writ application was undated.  *See* St. Rec. Vol. 9 of 11, Writ Application, 15 KH 1749, 9/24/15 (mailed 9/22/15).  It was mailed by the correctional center on September 22, 2015. The writ application included as an exhibit a court of a September 16, 2015 letter from the Louisiana First Circuit

by that court as an untimely writ application.  However, because that application was seeking

further *direct review*, it did not trigger statutory tolling under § 2244(d)(2).  The United States

Fifth Circuit Court of Appeals has expressly and conclusively held: "Under that provision it is only

state *post-conviction relief proceedings* that cause tolling."  *Butler*, 533 F.3d at 318 (emphasis

added).  Accordingly, an untimely *direct-review* writ application, such as the one in the instant

case, does not toll the federal limitations period.  *See id.* at 320 ("Filings that are not part of habeas

or post-conviction proceedings do not invoke Section 2244(d)(2) tolling.... The only document

Butler filed related to his untimely direct review application was the application itself, which is

indisputably a part of his direct appeal proceedings."); *Johnson v. Cain*, Civ. Action No. 12-974,

2013 WL 5961101, at *4 (E.D. La. Nov. 7, 2013); *Allen v. Tanner*, Civ. Action Nos. 11-927 and

11-1601, 2011 WL 4344586, at *2 (E.D. La. Aug. 19, 2011), *adopted*, 2011 WL 4345081 (E.D.

La. Sept. 15, 2011).

Magee had no properly filed state post-conviction or other collateral review pending in any

court during that period.  Magee is not entitled to statutory tolling.[108]

Therefore, Magee's federal petition, filed under the mailbox rule on August 3, 2022, was

filed more than seven years after the AEDPA filing period expired on July 7, 2015.  His untimely

---

Clerk's Office informing Magee that a decision was rendered in his direct appeal on June 6, 2014, and explaining that a copy of the opinion would be provided upon receipt of payment.  *Id.*, at Exhibit A.  Giving Magee every benefit of the doubt, the earliest he could have submitted his writ application to the Louisiana Supreme Court was September 16, 2015.

[108]Although Magee subsequently filed his first application for post-conviction relief on May 31, 2016, after his conviction was final under federal law and more than a year after the AEDPA filing period had expired, and thereafter filed many more pleading seeking post-conviction relief, state court applications filed after expiration of the federal limitations period are of no consequence for tolling purposes.  Simply put: once the federal limitations period has expired, "[t]here [i]s nothing to toll."  *Butler v. Cain*, 533 F.3d 314, 318 (5th Cir. 2008).

federal petition should be dismissed with prejudice unless he meets another exception or excuse to the running of the AEDPA limitations period.

###### B.    <u>No Equitable Tolling</u>

The post-AEDPA jurisprudence also provides for equitable tolling of the AEDPA limitations period where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). However, equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary circumstance outside of his control from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002); *see Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of

excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's seventeen-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period). A habeas petitioner bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Magee appears to claim that he is entitled to equitable tolling. Initially, he claimed that he was "led to believe" that his appellate counsel would file a writ application with the Louisiana Supreme Court.[109] In his habeas application, he claims that his appellate counsel failed to notify him of the June 6, 2014 decision by the Louisiana First Circuit on direct appeal.[110] He claims he did not receive a copy of the ruling until November 13, 2015, nearly two months after he filed his untimely writ application with the Louisiana Supreme Court.[111]

The Notice of Judgment and Disposition indicates that a copy of the opinion was transmitted to Magee's appellate counsel on June 6, 2014.[112] Magee provides no evidence corroborating his assertion that he was not actually informed by counsel of the June 6, 2014 decision.

---

[109]St. Rec. Vol. 9 of 11, Motion for Leave to File an Out-of-Time Writ of Certiorari, 9/23/15.

[110]Rec. Doc. No. 1-1, p. 11.

[111]*Id.*

[112]St. Rec. Vol. 3 of 11, Notice of Judgment and Disposition, 6/6/14.

The evidence of record demonstrates that in September 2015, more than fifteen months after the Louisiana First Circuit rendered its opinion, Magee sent correspondence to the Louisiana Circuit Court.[113]  Via letter dated September 16, 2015, the Clerk's Office advised Magee that a decision had been rendered in his appeal on June 6, 2014, and further advised that a copy of the opinion would be sent to him upon receipt of payment.[114]

The State correctly argues that evening assuming that Magee did not learn of the affirmance of his conviction until September 2015 and allowing equitable tolling from July 7, 2014 until the Louisiana Supreme Court denied his writ application related to his first application for post-conviction relief more than four years later, his habeas petition would still be untimely.  The Louisiana Supreme Court denied Magee's writ application related to the denial of his first application for post-conviction relief on October 15, 2018.  At that time, the Louisiana Supreme Court indicated that Magee had fully litigated his application for post-conviction relief.  Thereafter, Magee would have had one year, until October 15, 2019, by which to file his habeas petition.  He did not do so until August 3, 2022, nearly three years later.

The Court recognizes that Magee filed numerous pleadings in the state courts in an effort to obtain copies of records.  However, efforts like those made by Magee to obtain copies of documents and transcripts do not constitute other collateral review for purposes of the AEDPA tolling calculation.  *See Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp. 2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365

---

[113]St. Rec. Vol. 9 of 11, First Circuit Clerk's Office Letter, 9/16/15.  A copy of Magee's correspondence is not included in the record.

[114]*Id.*

(5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, No. 01-CV-0115, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather support and transcripts); *Grayson v. Grayson*, 185 F. Supp. 2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

While Magee continued to file numerous pleadings seeking post-conviction relief in the state courts from March 2021 through June 2022, none of those pleadings revived the AEDPA limitations period. As previously explained, once the federal limitations period has expired, "[t]here [i]s nothing to toll." *Butler*, 533 F.3d at 318.

Thus, even equitably tolling the statute of limitations until October 15, 2018, Magee's habeas petition filed August 3, 2022 is still untimely.

### C.   No Other Excuse or Exception to Time Bar

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" notwithstanding the "expiration of the statute of limitations" under the AEDPA. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* at 392, (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The Supreme Court, however, has cautioned that "[t]he miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' " *Id.* at 394-95 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The Supreme Court has made clear that

"habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." *Schlup*, 513 U.S. at 321.

Magee does not invoke *McQuiggin* nor does he make the required showing.  As the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is unavailable in the vast majority of cases, claims of actual innocence are rarely successful," *Schlup*, 513 U.S. at 324, and thus rejected "in virtually every case."  *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

Magee has presented no new evidence whatsoever of actual innocence.  Accordingly, he has not met "the threshold requirement" for *McQuiggin* to apply.  *McQuiggin*, 569 U.S. at 386.  As a result, the "actual innocence" exception does not aid him.

Finally, the fact that Magee has asserted ineffective assistance of counsel claims does not provide an exception to his untimely federal filing.  The United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), and their progeny, simply do not provide a basis for review of an untimely filed federal petition.  In *Martinez*, the Court held that *a state court imposed* " 'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.' "  *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17).  This case, however, is not based on a state-imposed bar to review.

Instead, the bar at issue in this federal court arises from Magee's failure to meet the *federal* limitations deadline under the AEDPA.  The *Martinez* and *Trevino* decisions do *not* address or provide an excuse for the untimely filing of a federal habeas petition.  *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report).  These cases also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA.  *See In re Paredes*, 587 F. App'x at 813; *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).  Thus, neither *Martinez* nor *Trevino* excuse the untimely filing of Magee's federal petition.

Magge's federal petition deemed filed on August 3, 2022, was not timely filed within the one-year AEDPA statute of limitations period which expired on July 7, 2015.  There is no statutory tolling, equitable tolling, or other exception applicable to or that would excuse his untimely filing.  Magee's petition was not timely filed and should be dismissed for that reason.

## V.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Donald Ray Magee, Jr.'s petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[115]

New Orleans, Louisiana, this 15th   day of February, 2023.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[115]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.